**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RICHARD H. GREEN,**
      **Plaintiff,**

**-vs-**                  **Case No.  6:07-cv-460-Orl-18UAM**

**COMMISSIONER OF SOCIAL**
**SECURITY,**
      **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

   Plaintiff Richard Green ["Green"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for Supplemental Security Income ("SSI") payments. *See* Docket No. 13.  For the reasons set forth below, the Commissioner's decision should be **REVERSED and REMANDED**.

**I.**  **PROCEDURAL HISTORY**

   On December 31, 2003, Green protectively filed a claim for SSI benefits, claiming disability as of April 1, 2003. R. 63. On July 18, 2006, the Honorable Jimmy N. Coffman, Administrative Law Judge ["ALJ"], held a 25-minute hearing on Green's claim in Orlando, Florida.  R. 142 - 61.  Attorney J. Michael Matthews represented Green at the hearing.  R. 142.  The ALJ heard testimony from Green and Green's half-sister, June Bingham.

   On October 6, 2006, the ALJ issued a decision that Green was not disabled and not entitled to benefits. R. 8-18. Following a review of the medical and other record evidence, the ALJ found that Green can perform his past relevant work as a citrus packer. R. 12, 15, 17, Finding 6. Alternately,

the ALJ found that Green retained the residual functional capacity ["RFC"] to perform the full range of the physical exertional requirements of unskilled work. R. 17, Finding 5. Applying the Medical-Vocational Guidelines, the ALJ concluded that Green was not disabled. R. 17, Finding 11.

The Appeals Council denied review on February 15, 2007. R. 2-4. On March 15, 2007, Green timely appealed the Appeals Council's decision to the United States District Court. Docket No. 1. On July 20, 2007, Green filed in this Court a memorandum of law in support of his appeal. Docket No. 13. On September 27, 2007, the Commissioner filed a memorandum in support of his decision that Green was not disabled. Docket No. 14. The appeal is ripe for determination.

## II.     THE PARTIES' POSITIONS

Green assigns three errors to the Commissioner. First, Green claims that the ALJ's finding that his non-exertional limitations did not significantly compromise his ability to perform unskilled work at all exertional levels was not supported by substantial evidence. Second, Green claims that the ALJ failed to apply properly Social Security Ruling 96-6p and weigh the medical opinions. Third, Green claims that the Commissioner erred in mechanically applying the Medical-Vocational Guidelines [the "grids"].

The Commissioner argues that substantial evidence supports his decision to deny disability and that no error was made.

## III.    THE STANDARD OF REVIEW

### A.     AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.  REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence

and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under

sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings

of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

## IV. APPLICATION AND ANALYSIS

### A. THE FACTS

Green was born June 10, 1953. R. 138. On his onset date of April 1, 2003, Green was 49 years old. *Id*. Green graduated from high school in 1972. R. 69. Green reports that he was considered a "slower student." *Id*. He was able to read and write but was delayed in many subjects. *Id*. Green does not believe he was in a special education curriculum. *Id*.

Upon his graduation from high school in 1972, Green worked seasonally as a citrus packer in a shipping department for almost 20 years until he was laid off in 1992. R. 103, 131. Following his lay off, Green stopped working and helped take care of his parents until his father died in 2000. R. 131, 136.

After his father's death, Green was accepted as a client of the State of Florida, Department of Health, Division of Vocational Rehabilitation ("Vocational Rehabilitation"). R. 136. In February 2000, Vocational Rehabilitation referred Green to psychiatrist Mortez Nadjafi, M.D. to treat his depression. R. 104. Green told Dr. Nadjafi that he was in counseling with Mary Parker, MA, but the administrative record does not contain any such treatment records. *Id*. He was working at the time for Goodwill Industries. R. 103. Dr. Nadjafi diagnosed Green with depression not otherwise

---

[1] The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

specified, passive dependent personality and limited intellectual capacity (borderline IQ). *Id*. He prescribed Zoloft and recommended that Green continue counseling. *Id*. By April 2000, Dr. Nadjafi noted that Green's mood was improved and that he was mildly depressed to normal. R. 102. Dr. Nadjafi continued treating Green until April 2, 2003. R. 94-100. Treatment notes during this time indicate that Green was doing well on Zoloft. *Id*. At his last appointment on April 2, 2003, Dr. Nadjafi stated there was no particular problem and no health issues. R. 94. Dr. Nadjafi indicated there were some questions about Green's job at Goodwill since he had been there for four years. *Id*. Green was advised to hold onto his job. *Id*.

During the time that Green was a client with Vocational Rehabilitation and working at Goodwill, he worked full-time sorting clothes, unloading big boxes, and "putting them up on the line for others." R. 67, 132, 148. Vocational Rehabilitation unsuccessfully tried placing Green in private sector jobs. R. 147-49, 158. At one point, he left Goodwill to work in a warehouse but was terminated. R. 132. After he was terminated, he attempted to return to work at Goodwill Industries, but Goodwill Industries would not take him back as a client. R. 15. Vocational Rehabilitation also tried to place Green in custodial work, but that only lasted for one day. R. 15 and 156). Green also used the resources of the Neighborhood Center for Families, which helped Green prepare a simple resume, sent him to job fairs and met with him twice a week to help him secure employment. R. 154.

Beginning in March 2004, Green began participating in labor pools in an effort to obtain work. R. 149. He would awake around 5:00 a.m. and either walk or take a bus to the labor pool location. *Id*. When he arrived at the labor pool, he would wait for a chance to be called for work (R. 71), but work was not guaranteed. He last worked through a labor pool in 2004 for two to five days per week "cleaning up." R. 107, 149. He stopped working at the labor pool because of changes in the weather

and work had gotten slow. R. 107. As of the date of the administrative hearing, Green had not worked in 2006. R. 15.

On February 7, 2005, Nancy S. Hinkeldey, Ph.D. conducted a General Clinical Evaluation with Mental Status and General Intellectual Evaluation. R. 106-110. Dr. Hinkeldey reported that Green had "some difficulty" with attention, and concentration and that his judgment and insight appeared marginal. R. 107. On the WAIS-III, his Verbal I.Q. was 74, his Performance I.Q. was 75, and his Full Scale I.Q. was 72; all of these scores were within the borderline range of 70-79. R. 108. Dr. Hinkeldey noted that on Verbal and Performance subtests, there was no significant difference (one point) between verbal skills and performance skills, although verbal skills and performance skills showed borderline ability overall. R. 108. She concluded that these scores placed Green within the borderline range of intellectual functioning overall, within the range usually associated with SLD programming in the school system. R. 108-109. Her diagnosis was rule out dysthymic disorder and borderline intellectual functioning. R. 109. She noted that Green has been able to maintain employment in the past and there did not appear to be any significant changes in his level of function. R. 109. Dr. Hinkeldey opined that Green appeared capable of handling his own funds, he lived independently, he was able to care for his hygiene, his social functioning and functional ability appeared to be marginal, but that his level of intellectual functioning was probably sufficient for employment R. 109. There was some mild depression, which did not preclude employment. *Id*.

On April 9, 2005, state agency consultant Ann J. Adams, PsyD., found that Green had moderate limitations in the following areas: the ability to understand and remember detailed instructions, to understand and carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruption from

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. R. 111-112. Adams diagnosed Green as having borderline intellectual functioning and passive-dependent personality. R. 128. He did not meet the criteria of the Listings. *Id*.

In July 2005, Vocational Rehabilitation referred Green to Michael Harrell, Ph.D. for a psychological evaluation. R. 131-37. On the WAIS-R, Green scored 79 on the Verbal IQ Index, 84 on the Performance IQ Index, and 81 on the Full Scale Index. R. 133. These scores placed him in the lower end of the Low Average Range of intellectual capability. *Id*. Dr. Harrell also administered the FIRO-B test and RISB test. *Id*. Dr. Harrell's Axis II diagnosis was personality disorder NOS, mild to moderate, with schizoid, avoidant and passive aggressive features (309.1); specific learning disorder with mathematics, moderate (315.1); and expressive language disorder, mild to moderate (315.1). R. 136. His GAF code was 65.[2] Dr. Harrell opined that, for Vocational Rehabilitation purposes, Green was a marginal candidate for services due largely to his personality problems and tendency towards inefficient behaviors. R, 137. Dr. Harrell further opined that Green would have difficulty sustaining employment because of his problems with pace, but that he could perform manual labor. R. 137.

---

[2] The Global Assessment of Functioning ["GAF"] Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (American Psychiatric Association 4th Ed. 1994) [hereinafter "DSM-IV"] at 32. A GAF code of 61 - 70 describes "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning... but generally functioning pretty well, has some meaningful interpersonal relationships." *Id*.

### B. THE ANALYSIS

#### 1. The ALJ Erred In Failing to Weigh the Medical Evidence

Green argues that the ALJ's finding the Green has moderate limitations in daily activities, concentration, persistence, and pace (R. 13), is inherently inconsistent with his finding that Green's non-exertional limitations do not significantly compromise Green's ability to work. Green also argues that the ALJ failed to explain the weight given to the opinions of the state agency consultants and why he accepted certain aspects of Dr. Adam's opinion and rejected others.

The law requires the ALJ to state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

In this case, the ALJ discussed the various medical opinions, but he failed to weigh those opinions. Although the Court finds that there is little evidence that Green is disabled within the meaning of the Social Security Act, the Court is not permitted to act as a finder of fact on these issues. The Court, therefore, should remand the case to the Commissioner pursuant to Sentence Four so that the ALJ may conduct the required weighing of opinions.

#### 2. Use of the Grids

Green also argues that the ALJ erred in relying on the grids. Use of the grids only becomes an issue if a claimant cannot return to his or her prior work, and the burden of proof shifts to the Commissioner to establish that the claimant can perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the

Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987).

The Court need not determine at this time whether the ALJ mistakenly relied upon the grids. On remand, if substantial evidence supports a finding that Green can perform his past relevant work, the grids are irrelevant.

## VI. **CONCLUSION**

For the reasons stated above, the decision of the Commissioner should be reversed and the case remanded to the Commissioner pursuant to Sentence Four for further action consistent with this opinion.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Recommended** in Orlando, Florida on November 16, 2007.

*Donald P. Dietrich*
DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

The Honorable G. Kendall Sharp
United States District Judge

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Haila Naomi Kleinman, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia		30303-8920

The Honorable Jimmy N. Coffman
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL		32817